UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES GEORGE LEWIS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   4:12CV247 TIA |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration.  The

suit involves Applications for Disability Insurance Benefits under Title II of the Social Security

Act and for Supplemental Security Income under Title XVI of the Act.  Claimant has filed a Brief

in Support of his Complaint, and the Commissioner has filed a Brief in Support of her Answer.

The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I.      Procedural History**

On April 1, 2009, Claimant Charles George Lewis, Jr. filed Applications for Disability

Insurance Benefits under Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr. 116-18) and for

Supplemental Security Income payments pursuant to Title XVI of the Social Security Act, 42

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is therefore substituted for Michael J. Astrue as the Defendant in this action.

U.S.C. §§ 1381, et. seq.  (Tr. 119-21).[2]  Claimant states that his disability began on May 13, 2009,[3] as a result of hand injury, back pain, right leg pain, anxiety, and bipolar disorder.  (Tr. 67).  On initial consideration, the Social Security Administration denied Claimant's claims for benefits.  (Tr. 67-72).  Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 74-75).  On September 2, 2010, a hearing was held before an ALJ.  (Tr. 29-63).  Claimant testified and was represented by counsel.  (Id.).  Medical Expert Dr. Mark Oberlander  and Vocational Expert Jim Breen also testified at the hearing.  (Tr. 42-52, 52-61, 112, 113).  Thereafter, on December 9, 2010, the ALJ issued a decision denying Claimant's claims for benefits.  (Tr. 10-24).  After considering the letter from counsel, the Appeals Council on December 7, 2011 found no basis for changing the ALJ's decision and denied Claimant's request for review of the ALJ's decision.  (Tr. 1-5, 8-9, 196-97).  The ALJ's determination thus stands as the final decision of the Commissioner.  42 U.S.C. § 405(g).

## II.    Evidence Before the ALJ

### A.  Hearing on September 2, 2010

#### 1.  Claimant's Testimony

At the hearing on September 2, 2010, Claimant testified in response to questions posed by the ALJ and counsel.  (Tr. 33-42).  Claimant lives with his oldest daughter and his ex-wife.  (Tr. 35).  He served as a structure specialist in the military.  (Tr. 42).  Claimant has a non-driver's license with an expiration date of August 27, 2014.  (Tr. 49-50).

---

[2]"Tr." refers to the page of the administrative record filed by the Defendant with her Answer (Docket No. 11/filed April 17, 2012).

[3]Although Claimant originally alleged an onset date of September 20, 2008 in his applications, he amended his onset date to May 13, 2009.  (Tr. 62, 114, 116, 119).

Claimant testified that he has a history of taking street drugs, but that he last used street drugs five years earlier when he had two hits off a marijuana cigarette.  (Tr. 33).  Claimant testified that he last used street drugs in 2007.  (Tr. 44).

Claimant testified that he could sit for fifteen to twenty minutes, stand for approximately thirty minutes, and walk for a quarter mile.  (Tr. 35).  He can bend at the knees and bend half way over.  He cannot get down on his hands and knees.  Claimant testified that he can lift a half of gallon of milk with his right hand and less with his left hand.  He can grip his left hand into a fist.  (Tr. 35).

Claimant testified that he experiences shortness of breath after walking a quarter of a mile.  (Tr. 37).  He has loss of sensation in four fingers on his left hand.  (Tr. 38).  He can make a fist with his left hand but he has no repetitive grip or strength.  (Tr. 38).  He cannot pick up coins, paperclips, or anything with weight with his left hand.  (Tr.39).  Claimant testified that he has been able to pay attention and concentrate at the hearing.  (Tr. 39).

Claimant testified that his psychiatrist and primary care physician advised him not to drive because of his medications.  (Tr. 36).  He does not have a driver's license.  (Tr. 36).  Claimant testified that his medications "leaves me to where I'm having to be lead around."  (Tr. 41).  Claimant testified that he experiences symptoms of depression such as moodiness and crying three to four days a week.  (Tr. 40).  Claimant testified that his doctors do not want him to drive because of his medications.  (Tr. 40).  His anxiety attacks cause increased blood pressure, and he freaks out on people.  (Tr. 41).

Claimant last received treatment in an emergency room in 2008 for an anxiety attack.  (Tr. 50).

- 3 -

In 2001, Claimant worked at Patriot Express as a part-time truck driver and a part-time warehouse worker.  (Tr. 52).  He drove a twenty-five foot box truck.  (Tr. 52).  Claimant lifted between ten to fifty pounds.  (Tr. 53).  Claimant testified that he last worked on September 20, 2008.  (Tr. 33).  Claimant testified that he stopped working, because the company closed.  (Tr. 47).

### 2.  Testimony of Medical Expert

Medical Expert Dr. Mark Oberlander, a clinical psychologist, chronicled Claimant's impairments in the order of their severity.  (Tr. 45).  Based on his review of the medical evidence, Dr. Oberlander testified Claimant has symptomology under four Social Security Listings, affective disorder, anxiety disorder formulated as panic disorder, personality disorder, and substance use and abuse.  (Tr. 45-46).  Dr. Oberlander noted Claimant has a history of involvement with the Department of Corrections and being charged with substance possession.  (Tr. 46).  During consultative examination on July 23, 2009, Claimant reported a history of heavy use of cannabis and being clean for three months.  Dr. Oberlander noted Dr. Raza treatment notes showing the opinion Claimant's cannabis abuse is continuing, and reporting moving to St. Louis two months earlier.  Dr. Oberlander opined none of Claimant's impairments either individually or collectively meet or equal a Listing.  (Tr. 46).

Dr. Oberlander opined Claimant's affective disorder is largely due to general medical conditions.  (Tr. 47).   During the period in question, September 2008 to the present, Dr. Oberlander opined the objective medical evidence shows Claimant has retained the capacity for simple, repetitive work activity, but he would not be capable of working in a setting which required understanding, remembering and executing complex work activity.  (Tr. 48).   Dr.

- 4 -

Oberlander further placed a limitation on Claimant's capacity to interact appropriately with the public, coworkers, and supervisors.  His work setting would require working in a setting which is characterized by less than frequent contact with the public, coworkers, and supervisors.  Dr. Oberlander found Claimant to be able to formulate plans for himself and adapting to changes in the work situation.  (Tr. 48).  Dr. Oberlander further found Claimant's functional capacity to engage in appropriate activities of daily living to be moderately impaired; his capacity to interact appropriately in social element of a work setting to be markedly impaired; and his capacity to understand, remember, act with persistence in simple, repetitive work activities to be moderately impaired.  (Tr. 49).  There is no evidence showing the existence of any episodes of decompensation or deterioration.  Although the record has vague references to some psychiatric treatment in the emergency room for anxiety symptomology, Dr. Oberlander noted there was no objective evidence on the record.  (Tr. 49).

Dr. Oberlander agreed with counsel that it is helpful to determine mental limitations in terms of work activities by being with the patient and asking the patient questions directly.  (Tr. 51).

### 3.  Testimony of Vocational Expert

Vocational Expert  testified in response to the ALJ's questions.  (Tr. 55-62).  Mr. Jim Breen classified Claimant's work within the last fifteen years as a truck driver, a semi-skilled job, medium both as performed and pursuant to the DOT.  (Tr. 54).  The warehouse worker job was an unskilled job, medium pursuant to the DOT and heavy as performed.  The ALJ asked him to consider Claimant's age, forty-six, his tenth grade education, and his ability to read, write, and understand English.  (Tr. 54).

- 5 -

The ALJ asked Mr. Breen to assume that

the person is able to lift and carry occasionally ten pounds, frequently ten pounds;
sit six hours out of an eight hour day; stand and walk four hours out of an eight
hour day; use of hand in arm controls, secondary to left hand problems and a
surgical correction of problems with the left hand; the person can use hand and
arm controls frequently; foot and leg controls repetitively; feeling, left hand, left
fingers, the left four fingers has loss of sensation, nevertheless the person can
maintain a grip and can grasp the hand into a fist; the fingering, the feeling in the
left hand, left fingers then is absent without motor interruption and ability to grasp
into a fist.  The right hand is repetitively feeling.  Fingering, occasional with the left
hand; repetitive with the right hand; handling objects with both hands, frequent;
reaching overhead and out to the side, either side, repetitive; climbing ladders,
ropes or scaffolds, never; ramps or stair, frequent; balancing, frequently; stooping,
frequently; kneeling, frequently; crouching and crawling, only occasional.  Mental
impairments are such, secondary to anxiety disorder and other documented
treatment records.  The person is able to understand, remember and carry out
simple, repetitive tasks with the above limitations, physical limitations playing out
on the tasks he could perform.  Maintain attention and concentration for short
periods of time.  Simple, unskilled tasks.  Can interact with the general public less
than frequent.  I would put that he's not completely excluded from the general
public, including discussions, problem solving, documenting any kind of
information would be excluded.  So it would be only a transitory, intermittent, less
than frequent general public contact.  With supervisors and coworkers, as needed,
but he's better working with things rather than people.  The person is able to
adjust to changes in the work setting on an occasional basis.  The environmental
limitations are that the, the person should be excluded from commercial truck
driving.  And that would include operation of any other kind of mechanized trucks
or vehicles in the workplace.  With this hypothetical could this person do the past
relevant work?

(Tr. 55-56).  Mr. Breen responded that the hypothetical worker would be able to do any past

relevant work.  (Tr. 56).

Mr. Breen opined that such an individual could perform other jobs in the regional,

national, and local economy such as unskilled, sedentary occupations such as an eyeglass

assembler with 800 jobs in the St. Louis area and 1, 800 in Missouri; printed circuit board

assembler, 4,000 jobs in the St. Louis area and 9,500 in Missouri; surveillance system monitor,

140 jobs in St. Louis and 1,500 in Missouri.  (Tr. 56).

> Next, the ALJ asked Mr. Breen to assume the additional information,
> secondary to a mental disorder the person would be off task ten percent of the time
> with five percent reduction in productivity and this is secondary to a mental
> disorder for which he is being treated, which would take him off task.  What effect
> would this have on these jobs?

(Tr. 57).  Mr. Breen responded that while the DOT does not discuss being off task, based on his

fifteen years in placing people, Mr. Breen believed being off task about ten to twelve percent of

the time to be the upper limit of what employers will typically tolerate.  Thus, being off task ten

percent of the time would not have an effect of the jobs he discussed or the number of available

jobs.  (Tr. 57).

Counsel asked Mr. Breen to assume the individual has no ability to deal with work stress

on a sustained basis; and the ability to function independently, behave in an emotionally stable

manner, and to demonstrate reliability to be poor to none.  (Tr. 58).  Mr. Breen opined such

individual would not be employable.  (Tr. 59).  When asked, Mr. Breen testified that the eyeglass

assembler and the printer circuit board assembly jobs would require bilateral hand use on a

frequent basis.  (Tr. 59).  Counsel asked if the individual was limited to occasional left hand

fingering he would be precluded from performing these jobs.  Mr. Breen agreed.  (Tr. 59).

The ALJ asked Mr. Breen to confirm that if the individual has occasional use of the hands

would eliminate the production assembly jobs such as the eyeglass assembly and the circuit board

assembly.   (Tr. 59).  Mr. Breen noted only the surveillance monitor job would not be affected.

(Tr. 59).   Mr. Breen testified that he placed one person in the last year as a surveillance system

monitor.  (Tr. 60).

- 7 -

### 4.  Forms Completed by Claimant

In the Function Report Adult - Third Party, Vicky Phillips, Claimant's ex-wife, reported that Claimant helps watch his granddaughter.  (Tr. 166).  She listed doing the laundry, cleaning the table after meals, and loading the dishwasher as household chores Claimant can do.  (Tr. 167).  She listed watching television, fishing and playing with grandchildren as his hobbies.  (Tr. 169).

## III.    Medical Records

On May 11, 2005, Dr. James Stuckmeyer completed an independent medical evaluation of Claimant on referral by counsel.  (Tr. 198).  Claimant reported being employed with Patriot Incorporated for five years and being injured in September 2004 while performing occupational duties.  His hand was crushed between a truck and his person while he was unloading freight. (Tr. 198).  After the accident, the large flap laceration of the left hand was suture repaired.  (Tr. 199).  After consultation, Dr. Petit placed Claimant on a modified duty status with restricted use of the left hand and no utilization of power towers or impact tools and recommended consultation with a hand specialist.  At the consultation, Claimant reported having stiffness and poor function. Dr. Divelbiss found Claimant to have a left hand laceration and recommended he return to light duty status with no use of the left hand and an aggressive therapeutic program.  In a follow-up visit, Dr. Divelbiss recommended surgical intervention and performed tenolysis of the left index finger extensor digitorum communis tendon as well as removal of foreign body from left long finger.  (Tr. 199).  After surgery, Claimant completed physical therapy and a functional capacity evaluation revealed Claimant capable of performing work in the light duty status exerting up to twenty pounds force occasionally and/or up to ten pounds of force frequently and/or a negligible amount of force constantly to move objects.  (Tr. 200).  Dr. Divelbiss discharged Claimant from

- 8 -

his care finding Claimant's overall motion had improved, but he was still struggling with pain primarily in the index finger.   Dr. Divelbiss noted in a functional capacity evaluation, Claimant demonstrated inconsistent performances and self-limited behavior.  (Tr. 200).

At the evaluation, Claimant reported ongoing symptoms of left hand pain, decreased grip strength, difficulty with straightening his fingers, persistent numbness and sensitivity to temperature changes.  (Tr. 200).  Claimant smokes a package of cigarettes each day.  (Tr. 200). Claimant reported having ongoing symptoms of back pain with radiating pain into the right leg and symptoms of numbness and tingling into right lower extremity.  (Tr. 201).  Claimant described difficulty with prolonged standing, prolonged walking, prolonged sitting, lifting, and bending.  Examination showed decreased grip and pinch strength, weak extensor strength, and pain with resisted extension.  Examination of his lumbosacral spine revealed tenderness to the lower paraspinal muscles, full range of motion, and straight leg test negative in both lower extremities.  Dr. Stuckmeyer agreed with the limitations placed upon Claimant in the functional capacity evaluation and noted Claimant has ongoing symptoms of low back pain and radicular symptoms into the lower extremity.  Dr. Stuckmeyer opined as follows: "[t]he synergistic effect of the disabilities creates a greater overall disability to the body as a whole than the mere simple sum of the disabilities and I would render a 15 percent augmentation factor."  (Tr. 201).

The October 14, 2005 MRI showed a small lesion in the lateral wrist, likely representing a small ganglion.  (Tr. 299).

On August 25, 2008, Claimant reported having left wrist pain and needing a medication refill.  (Tr. 212, 352).  Examination showed no skeletal tenderness or joint deformity.  (Tr. 213, 353).  In a follow-up visit to Lincoln County Medical Center on September 15, 2008, Claimant

- 9 -

reported chronic anxiety and bipolar disorder as chronic problems.  (Tr. 216, 356).  The examiner

recommended that Claimant see a psychiatrist and an orthopedist.  (Tr. 217, 357).

       In the August 22, 2008 emergency room treatment note at St. Joseph Hospital West,

Claimant reported withdrawal inasmuch as he has been out of all medication for four days.  (Tr.

269).  The emergency room doctor provided Claimant with medication refills.  (Tr. 278).

       In the September 10, 2008 emergency room treatment note at St. Joseph Hospital West,

Claimant reported agitation and abdominal pain.  (Tr. 263).  Claimant reported a history of anxiety

and being out of medication, Xanax.  (Tr. 263, 267).  Psychiatric examination showed Claimant's

memory and judgment to be normal, his mood to be anxious but not exhibiting a depressed mood.

(Tr. 264).

       On May 13, 2009, Claimant was treated at Crider Health Center.  (Tr. 223).  He reported

moving from Kansas City two months earlier and while living in Kansas City for nine years, he

worked as a truck driver and in a warehouse.  Claimant reported being unemployed since 2004 and

being denied SSI after several appeals.  Claimant reported being hospitalized for anxiety attacks.

(Tr. 223).  In 2001, Claimant was arrested for marijuana possession and failed to complete drug

counseling in 2005.  (Tr. 224).  Claimant reported being out of Paxil for three days and Vistaril for

two weeks.  (Tr. 224).  Dr. Syed Raza diagnosed Claimant with major depressive disorder and

panic disorder and having severe stressors including financial and family.  (Tr. 225).  As treatment,

the doctor prescribed Paxil, Trazodone, and Vistaril.  (Tr. 225).

       In follow-up treatment at Crider Health Center on July 8, 2009, Claimant acknowledged he

is waiting for disability to decide, and he continues to be frustrated, anxious, and depressed about

his present situation.  (Tr. 308).  Dr. Raza noted that Claimant "is aware that if disability is to be

- 10 -

decided, it will have to be on the basis of his physical problems involving his wrists." (Tr. 308).

Dr. Raza observed Claimant to be unkempt, ungroomed, and unshaven.  Dr. Raza diagnosed

Claimant major depressive disorder and panic disorder and  adjusted his medication regimen.  (Tr.

308).

On July 23, 2009, Dr. Inna Park completed an internal medicine examination at the request

of the state agency.  (Tr. 227).  Back and leg pain and hand pain were his chief complaints.

Claimant reported taking Tramadol taking the edge off of his pain.  Claimant is right hand

dominant and most of his difficulties are with his left hand.  He has difficulty twisting off caps from

a soda can.  (Tr. 227).  Claimant reported being able to walk for seven blocks, stand for one hour,

and sit in the living room for two hours and the dining room table for twenty minutes.  (Tr. 227-

28).  Claimant is a smoker and denied any illicit drug use.  (Tr. 228).  Examination showed

tenderness along the lumbar spinal scar and muscular tenderness in the lumbar region.  (Tr. 228-

29).  Dr. Park observed Claimant to get on and off the examination table cautiously, and his gait to

be moderately antalgic.  (Tr. 229).  Dr. Park listed in the clinical impression chronic low back pain,

fine motor and strength difficulties in his non-dominant hand, and recent onset of right knee

arthralgias.  (Tr. 229).   In the Range of Motion Values, Dr. Park found Claimant's grip strength to

be 3 out of 5 in his left hand and 5 out of 5 in his right hand.  (Tr. 233).  Examination showed

Claimant able to fully extend and make a fist with both hands and fingers could be opposed with

his right hand but not his left.  (Tr. 233).

Dr. Sherman Sklar completed an evaluation of Claimant on referral on July 23, 2009 and

reviewed the Crider Mental Health Center treatment notes and a function report completed by

Claimant's ex-wife.  (Tr. 236).  His chief complaints included bipolar, anxiety, depression disorder,

- 11 -

and problems with people and crowds.  (Tr. 236).  Claimant reported never being hospitalized for

psychiatric treatment, but he has visited emergency rooms for symptoms of anxiety.  Claimant

reported taking Buspirone, Tramadol, Paroxetine, Trazodone, and Alprazolam and the medications

benefitting him by making him less irritable and calming him down.  (Tr. 236).  Claimant earned his

GED while serving in the Army Reserves.  (Tr. 237).  With respect to his present functioning,

Claimant reported going for walks and visiting his grandchildren.  Claimant reported his anxiety

being under control at that time.  (Tr. 237).  Claimant acknowledged heavy use of marijuana often

on a daily basis to help him cope with his mood issues.  (Tr. 237-38).  He attended treatment and

has been clean for three months.  (Tr. 238).  Dr. Sklar observed his affect to be generally

controlled though underlying anger to be evident from time to time.  (Tr. 238).  Claimant lives in a

trailer with his ex-wife and twenty year old daughter.  (Tr. 239).  Claimant does some light

cooking and helps with the household chores and enjoys fishing, watching television, going for

walks, and visiting with his grandchildren.  Dr. Sklar diagnosed Claimant with depressive disorder

and cannabis dependence and assessed his GAF to be 57.  (Tr. 239).  Claimant reported receiving

outpatient psychiatric treatment in the form of medication, and the medication is helpful.  (Tr.

240).

In the Psychiatric Review Technique completed by Dr. Robert Cottone on August 10,

2009, affective disorders and substance addiction disorders are listed .  (Tr. 241).  Dr. Cottone

recommended a MRFC and Claimant needs to avoid work involving public contact.  (Tr. 251).  He

found Claimant to be cognitively intact.  Dr. Cottone noted that the third party function report

"appears to limit him more than would be anticipated given the current MSE and the current

diagnosis.  He must avoid substances of abuse."  (Tr. 251).   In the Mental Health Functional

Capacity Assessment, Dr. Cottone noted Claimant to be markedly limited in his ability to understand and remember detailed instructions and to interact appropriately with the general public.  (Tr. 253-54).  Dr. Cottone opined that Claimant "must avoid work involving intense or extensive interpersonal interaction; handling complaints or dissatisfied customers; close proximity to co-workers; close proximity to available controlled substances; public contact."  (Tr. 255).  Further, Dr. Cottone found Claimant can understand and remember and carry out simple tasks, relate adequately to co-workers or supervisors, and adjust adequately to ordinary changes in work routine.  (Tr. 255).

In the Physical Residual Functional Capacity Assessment dated August 10, 2009, Kevin Threlkeld listed lumbar laminectomy and left hand injury as Claimant's primary diagnosis.  (Tr. 256).  He found Claimant could occasionally lift twenty pounds and frequently lift ten pounds; stand and/or walk at least two hours in an eight-hour workday; and sit about six hours in an eight-hour workday.  (Tr. 257).  He limited Claimant's ability to push and/or pull in upper and lower extremities.  (Tr. 257).  With respect to postural limitations, he found Claimant could never balance and occasionally climb, stoop, kneel, crouch, and crawl.  (Tr. 259).  He found Claimant limited in his ability to handle and finger on his left hand only.  He indicated that Claimant has no visual or communicative limitations established.  (Tr. 259-60).  With respect to environmental limitations, he found Claimant should avoid concentrated exposure to extreme heat and cold, humidity, hazards, and heights, because of Claimant's use of pain medication with possible fatiguing side effect.  (Tr. 260).

- 13 -

On September 9, 2009, Claimant reported experiencing hand tremors most likely caused by his failure to take his afternoon Xanax dosage. (Tr. 309). Dr. Raza adjusted his medication regimen. (Tr. 309).

In the September 22, 2009 treatment note from Crider Health Center, Claimant returned for a medication refill. (Tr. 279). Claimant reported smoking one package of cigarettes for thirty-five years. (Tr. 279). Claimant reported fatigue, malaise, back pain, and bone/joint symptoms. (Tr. 280). Examination showed Claimant to have no unusual anxiety or evidence of depression. (Tr. 281). Dr. Blake Anderson prescribed medications as treatment. (Tr. 281-82).

In a follow-up visit on October 6, 2009, Claimant reported back pain resulting from hurting his back three days earlier while helping lifting\dragging objects. (Tr. 283). Examination showed Claimant to have no unusual anxiety or evidence of depression. (Tr. 285). Dr. Anderson prescribed medications as treatment. (Tr. 285-86).

Dr. Timothy McCullough, an emergency room doctor at Lincoln County Medical Center, treated Claimant on October 18, 2009 after Claimant injured his wrist while throwing trash on a fire. (Tr. 350). Claimant reported his hand and wrist were bruising and hurting. As treatment, Dr. McCullough prescribed Vicodin and a wrist splint. (Tr. 350-51).

On October 27, 2009, Claimant reported having left wrist pain in a follow-up visit at Crider Health Center. (Tr. 287). While working on a dog kennel and carrying sticks, Claimant felt a crunch in his left forearm. Claimant reported receiving treatment in the emergency room and being given a name of an orthopedist for follow-up treatment. (Tr. 287). Musculoskeletal examination showed a full range of motion. (Tr. 288). In the assessment, Dr. Anderson noted Claimant has

pain in the joint of his forearm stemming from an injury two weeks earlier.  (Tr. 289).  Dr. Anderson continued his medication regimen.  (Tr. 289).

On November 9, 2009, Dr. Subbarao Polineni examined Claimant.  (Tr. 318).  Claimant reported having a degloving injury, but Dr. Polineni noted not seeing signs, just a flap type of avulsion with a sutured area.  Examination showed a full range of motion at the IP joints.  On November 12 and December 23, 2009, Claimant failed to appear for his scheduled follow-up appointments.  (Tr. 318).

On November 11, 2009, Claimant reported doing physically well during treatment at Crider Health Center.  (Tr. 310).  Claimant blamed his financial situation causing stress.  He spends his free time watching television and walking around the farm.   Dr. Raza adjusted his medications.  (Tr. 310).

In follow-up treatment on November 17, 2009 at the Crider Health Center, Dr. Blake referred Claimant to pain management as treatment for his severe back pain and prescribed Percocet.  (Tr. 292).

In the January 20, 2010 Medical Assessment of Ability to Do Work-Related Activities, Dr. Syed Raza noted Claimant to have poor/none ability to deal with work stresses and function independently; and fair ability to follow work rules, relate to co-workers, deal with public, use judgment, interact with supervisors, and maintain attention/concentration.  (Tr. 306).  With respect to making performance adjustments, Dr. Raza found Claimant to have poor/none ability to understand and carry out complex or detailed instructions, and fair ability to understand and carry out simple instructions.  (Tr. 306).  As support, Dr. Raza noted that Claimant remains very anxious, stressed out, worried, and emotionally uncomfortable.  (Tr. 307).  Dr. Raza opined that

- 15 -

these limitations have been present for six years, and his prognosis is poor because his physical health problems do not respond to treatment.  (Tr. 307).

The January 29, 2010 x-ray of the lumbar spine showed minimal upper lumbar dextroscoliosis and mild to moderate degenerative changes.  (Tr. 343).

Dr. Anderson treated Claimant's chronic back pain on February 4, 2010.  (Tr. 324-25).

On March 10, 2010 treatment note, Dr. Raza noted Claimant missed his January appointment and noted he had been diagnosed with acid reflux.  (Tr. 321).  He reported his only source of income to be food stamps.  Dr. Raza adjusted Claimant's medications.  (Tr. 321).

The April 20, 2010 MRI of Claimant's lumbar spine showed grade 1 retrolisthosis at L5-S1, moderate mixed central disc protrusion at L5-S1, moderate to large broad-based disc herniation lt L3-L4 with likely compression of right L3 nerve root.  (Tr. 336).

On April 21, 2010, Claimant returned to Dr. Anderson for review of his x-ray and MRI of his lumbar spine.  (Tr. 327).  Dr. Anderson referred Claimant to an orthopedic surgeon for treatment.  (Tr. 329).

In a follow-up visit on May 5, 2010, Claimant reported experiencing much pain and having two bulging discs in the lumbar region.  (Tr. 322).  Dr. Raza refilled his medications.  (Tr. 322).  Claimant returned on June 30, 2010, and reported pain in lumbar, lower thoracic region and waiting to start treatment at a pain management clinic.  (Tr. 323).

On June 23, 2010, Claimant reported having sores on legs and back pain after falling down stairs.  (Tr. 330).  Examination showed posterior tenderness of his spine and limited range of motion.  (Tr. 332).  Dr. Anderson ordered pain management as treatment.  (Tr. 333).

- 16 -

On August 19, 2010, Dr. Adam LaBore evaluated Claimant's back pain radiating to the right lower extremity. (Tr. 374). In the surgical consultation, Claimant reported back pain starting in 1988 and gradually becoming worse over the last several months. (Tr. 375). Claimant reported being disabled and smoking less than one half package of cigarettes each day. (Tr. 375). Examination showed lumbar range of motion poorly tolerated in all planes. In the impression, Dr. LaBore noted radicular low back pain with multilevel disc herniations and multilevel degenerative changes. (Tr. 375). Dr. LaBore instructed Claimant to continue with pain management physician. (Tr. 375-76).

On August 26, 2010, Dr. Suresh Krishnan completed a pain management consultation on referral by Dr. Anderson. (Tr. 360). Claimant reported pain in his lower back caused by a lifting injury. Claimant reported not being able to walk more than a half a mile before experiencing pain. With respect to his social life, Claimant indicated that "[p]ain has no significant effect on my social life apart from limiting my more energetic interests (e.g. dancing, etc.)." (Tr. 360). Claimant reported decreased activity level and fatigue. (Tr. 361). Dr. Krishnan observed Claimant able to transfer and ambulate around the room and heel and toe walk. Cognitive assessment revealed no abnormalities, his affect to be appropriate, and oriented to person, place, time, and event. (Tr. 361). After examination, Dr. Krishnan found Claimant to have normal cervical flexion and extension and left and right wrist. (Tr. 362). His left-handed and right handed grip strength and fingering were found to be normal. Lumbar/lower extremity examination showed lower back to be normal and palpation of lumbar spine to be normal. (Tr. 362). Claimant experienced moderate pain during lumbar deflexion and reduced range of motion. (Tr. 363). Dr. Krishnan diagnosed Claimant with lumbar disc displacement, degeneration of lumbar, and postlaminectomy syndrome

- 17 -

of lumbar region.  Dr. Krishnan considered Claimant's prognosis to be poor and opined Claimant

may or may not recover completely.  For relief of his symptoms, Dr. Krishnan recommended

lumbar epidural steroid injection and medications for pain relief.  Dr. Krishnan also instructed

Claimant to continue current home exercises and physical therapy program and to stop smoking.

(Tr. 363).

## IV.    The ALJ's Decision

The ALJ found that Claimant meets the insured status requirements of the Social Security

Act through June 30, 2010.  (Tr. 15).  Claimant has not engaged in substantial gainful activity

since September 20, 2008, the alleged onset date.  (Tr. 15).  The ALJ found that the medical

evidence establishes that Claimant had the following severe impairments: status post multiple

surgeries on the left hand, degenerative disc disease, major depressive disorder, panic disorder,

personality disorder, and history of substance abuse, but no impairment or combination of

impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No.

4.  (Tr. 15-16).  The ALJ opined that Claimant has the residual functional capacity to perform less

than a full range of sedentary work.  (Tr. 18).  The ALJ found that Claimant can lift and carry up

to ten pounds occasionally and frequently, he can stand or walk for up to four hours in an eight-

hour workday; can frequently use hand/arm controls secondary to left hand problems, can use foot

and leg controls repetitively; and can grip, grasp and make a fist with both hands.  The ALJ noted

that inasmuch as Claimant has the absence of feeling in his left hand, he can occasionally finger

with his left hand.  With his right hand, he can finger repetitively.  The ALJ further opined that

Claimant can frequently handle objects with both hands and frequently reach overhead and to the

side.  Claimant can never climb ladders, ropes or scaffolds, and can occasionally stoop, crouch, and

crawl.  Claimant can perform simple, repetitive tasks; can maintain attention and concentration for short periods of time, can interact with the public less frequently but is not completely excluded from work with the general public.  The ALJ opined Claimant can have contact with supervisors and coworkers as needed, but he works better with things than people.  Claimant can adjust to occasional changes in the work setting and cannot drive.  (Tr. 18).  The ALJ found that Claimant is unable to perform any past relevant work as a truck driver or warehouse worker.  (Tr. 22).

The ALJ found Claimant was born on August 27, 1964, and was forty-four years old which is defined as a younger individual age 45-49 on the alleged disability onset date.  (Tr.22).  The ALJ noted Claimant has at least a high school education and able to communicate in English.  The ALJ noted that the transferability of job skills is not an issue because using the Medical-Vocational Rules supports a finding that Claimant is not disabled whether or not Claimant has transferable job skills.  Considering Claimant's age, education, work experience, and residual functional capacity, the ALJ opined there are jobs that exist in significant numbers in the national economy that Claimant can perform such as eye glass assembler, printed circuit board assembly, and surveillance system monitor.  (Tr. 22).  The ALJ concluded that Claimant was not under a disability from September 20, 2008, through the date of this decision.  (Tr. 23).

## V.    Discussion

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  Additionally, the claimant will

be found to have a disability "only if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his age,

education and work experience, engage in any other kind of substantial gainful work which exists

in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v.

Yuckert, 482 U.S. 137, 140 (1987).

        The Commissioner has promulgated regulations outlining a five-step process to guide an

ALJ in determining whether an individual is disabled.  First, the ALJ must determine whether the

individual is engaged in "substantial gainful activity."  If she is, then she is not eligible for disability

benefits.  20 C.F.R. § 404. 1520(b).  If she is not, the ALJ must consider step two which asks

whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical

or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimant is not

found to have a severe impairment, she is not eligible for disability benefits.  If the claimant is

found to have a severe impairment the ALJ proceeds to step three in which he must determine

whether the impairment meets or is equal to one determined by the Commissioner to be

conclusively disabling.  If the impairment is specifically listed or is equal to a listed impairment, the

claimant will be found disabled.  20 C.F.R. § 404.1520(d).  If the impairment is not listed or is not

the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the

claimant is capable of doing past relevant work.  If the claimant can still perform past work, she is

not disabled.  20 C.F.R. § 404.1520(e).  If the claimant cannot perform past work, the ALJ

proceeds to step five in which the ALJ determines whether the claimant is capable of performing

other work in the national economy.  In step five, the ALJ must consider the claimant's "age,

- 20 -

education, and past work experience."  Only if a claimant is found incapable of performing other

work in the national economy will she be found disabled.  20 C.F.R. § 404.1520(f); see also

Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be

affirmed if they are supported by "substantial evidence on the record as a whole."  Pearsall, 274

F.3d at 1217.  Substantial evidence has been defined as "less than a preponderance, but enough

that a reasonable mind might accept it as adequate to support a decision."  Id.  The court's review

"is more than an examination of the record for the existence of substantial evidence in support of

the Commissioner's decision, we also take into account whatever in the record fairly detracts from

that decision."  Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).  The Court will affirm the

Commissioner's decision as long as there is substantial evidence in the record to support his

findings, regardless of whether substantial evidence exists to support a different conclusion.  Haley

v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative

record and consider:

1.     The credibility findings made by the ALJ.

2.     The claimant's vocational factors.

3.     The medical evidence from treating and consulting physicians.

4.     The claimant's subjective complaints relating to
       exertional and non-exertional activities and impairments.

5.     Any corroboration by third parties of the
       claimant's impairments.

      6.      The testimony of vocational experts when required which
                 is based upon a proper hypothetical question which sets forth the claimant's
                 impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

        The ALJ's decision whether a person is disabled under the standards set forth above is

conclusive upon this Court "if it is supported by substantial evidence on the record as a whole."

Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935

(8th Cir. 2008)).  "Substantial evidence is less than a preponderance but is enough that a

reasonable mind would find it adequate to support the conclusion."  Wiese, 552 F.3d at 730

(quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)).  When reviewing the

record to determine whether the Commissioner's decision is supported by substantial evidence,

however, the Court must consider evidence that supports the decision and evidence that fairly

detracts from that decision.  Id.  The Court may not reverse that decision merely because

substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033,

1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730.

Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those

positions represents the agency's findings, the [Court] must affirm the agency's decision."

Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000).  See also Owen v. Astrue, 551 F.3d 792,

798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's

decision falls within the available zone of choice") (internal quotations omitted).

        Claimant argues that the ALJ's decision is not supported by substantial evidence on the

record as a whole, because the ALJ failed to include in the RFC mental limitations.  Claimant

contends that the ALJ erred at step 5 in finding that he could perform work as an eyeglass assembler and a printed circuit board assembler in light of the vocational expert opining that such jobs were precluded by the limitation to occasional fingering with his left hand.  Claimant further contends that the ALJ erred in weighing the medical opinion evidence.

A.      Residual Functional Capacity

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to include in the RFC mental limitations.  In particular, Claimant contends the ALJ failed to include mental limitations such as dealing with work stress or relating predictably in social situations, among other limitations.

A claimant's RFC is what he can do despite his limitations.  Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001).  The claimant has the burden to establish his RFC.  Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  The ALJ determines a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations.  Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); Eichelberger, 390 F.3d at 591; 20 C.F.R. § 404.1545(a).  The ALJ is "required to consider at least some supporting evidence from a [medical professional]" and should therefore obtain medical evidence that addresses the claimant's ability to function in the workplace.  Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted).  An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand.  Id.

The ALJ found that Claimant has the residual functional capacity to perform less than a full range of sedentary work.  He can lift and carry up to ten pounds occasionally and frequently, he

can stand or walk for up to four hours in an eight-hour workday; can frequently use hand/arm controls secondary to left hand problems, can use foot and leg controls repetitively; and can grip, grasp and make a fist with both hands.  The ALJ further found that inasmuch as Claimant has the absence of feeling in his left hand, he can occasionally finger with his left hand.  With his right hand, he can finger repetitively.  He can frequently handle objects with both hands and frequently reach overhead and to the side.  Claimant can never climb ladders, ropes or scaffolds, and can occasionally stoop, crouch, and crawl.  He can perform simple, repetitive tasks; can maintain attention and concentration for short periods of time, can interact with the public less frequently but is not completely excluded from work with the general public.  The ALJ opined Claimant can have contact with supervisors and coworkers as needed, but he works better with things than people.  Claimant can adjust to occasional changes in the work setting and cannot drive.

The determination of Claimant's credibility is for the Commissioner, and not the Court, to decide.  Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  The ALJ may not discredit Claimant's complaints of pain solely because they are unsupported by objective medical evidence. O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003); Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). Instead, the ALJ must fully consider all of the evidence relating to the subjective complaints, including the Claimant's work record, the absence of objective medical evidence to support the complaints, and third party observations including treating and examining doctors as to:

1.      claimant's daily activities;

2.      duration, frequency and intensity of the pain;

3.      precipitating and aggravating factors;

4.       dosage, effectiveness and side effects of medication;

5.       functional restrictions.

Ford v. Astrue, 518 F.3d 979, 982 (8th Cir. 2008) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).  The ALJ may disbelieve the claimant's subjective complaints "if there are inconsistencies in the evidence as a whole."  Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).

When determining a claimant's complaints of pain, the ALJ may disbelieve such complaints if there are inconsistencies in the evidence as a whole.  Polaski, 739 F.2d at 1322. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints.  Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); see also Johnson v. Secretary of Health and Human Servs., 872 F.2d 810, 813 (8th Cir. 1989).  "An ALJ must do more than rely on the mere invocation of Polaski to insure safe passage for his or her decision through the course of appellate review."  Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995).   Where an ALJ explicitly considers the Polaski factors but then discredits a claimant's complaints for good reason, his decision should be upheld.   Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).  However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically.  Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1966).  The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints.  Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000); see also Brown, 87 F.3d at 966.  The ALJ's credibility findings are entitled to deference if the findings are supported by multiple valid reasons.  See Goff v. Barnhart, 421 F.3d 785, 791-92 (8th Cir. 2005); Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (if

ALJ explicitly discredits claimant and gives good reasons for doing so, court will normally defer to credibility determination).  The ALJ considered the inconsistencies in the records as a whole, including Claimant's improvement with treatment, the medical evidence, and Claimant's demeanor and testimony at the hearing.  The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints.  See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995) (lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints).  The ALJ noted that although Claimant asserts that he is unable to work due to a hand injury, back pain, right leg pain, anxiety, and bipolar, the clinical and objective medical findings are inconsistent with an individual experiencing totally debilitating symptomatology.  The ALJ then addressed other inconsistencies in the record to support his conclusion that Claimant's complaints were not credible.  The undersigned finds that the ALJ's credibility determination is supported by substantial evidence in the record as a whole.

Specifically, the ALJ noted that no treating physician stated that Claimant was disabled or unable to work during the relevant time period.  See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints).  The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints.  See

- 26 -

Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is

strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir.

1994)(the ALJ was entitled to find that the absence of an objective medical basis to support

claimant's subjective complaints was an important factor in evaluating the credibility of her

testimony and of her complaints).  In addition, the ALJ noted that no physician had ever made any

medically necessary restrictions, restrictions on his daily activities, or functional or physical

limitations.  Likewise, the medical evidence is devoid of any evidence showing that Claimant's

condition has deteriorated or required aggressive medical treatment although Claimant testified

otherwise at the hearing.  See Id.; Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001) (noting a

claimant's inconsistent statements as a factor to consider in determining claimant's credibility).  The

undersigned further notes that the medical records show Claimant to be noncompliant with

medications at times, and he missed scheduled doctor's appointments.  Wildman v. Astrue, 596

F.3d 959, 965-66 (8th Cir. 2010) ("noncompliance can constitute evidence that is inconsistent with

a treating physician's medical opinion"); 20 C.F.R. §§ 404.1530, 416.930 (unjustified failure to

follow prescribed treatment is grounds for denying disability).

       Likewise, the ALJ found that the medical evidence showed Claimant's impairments

improved with treatment.[4]  The ALJ noted that the medical records showed that the medications

have been relatively effective in controlling many of his symptoms.  Claimant's pain improved with

epidural steroids and medication. Further, his allegations regarding decreased strength in his left

hand is refuted by the objective testing and his own reporting of activities including helping lifting

---

       [4]Although not discussed by the ALJ, the medical record shows after surgical intervention and
physical therapy as treatment for his left hand, Dr. Dibelbiss noted in a functional capacity
evaluation, Claimant demonstrated inconsistent performances and self-limited behavior.

and/or dragging objects and carrying objects such as sticks.  Likewise, Claimant reported his

psychiatric medications benefitted him, made him less irritable, and calmed him down.  Claimant

also reported receiving outpatient psychiatric treatment in the form of medication, and the

medication is helpful, and his anxiety being under control at that time.  Conditions which can be

controlled by treatment are not disabling.  See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir.

2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if impairment can be

controlled by treatment, it cannot be considered disabling); Medhaug v. Astrue, 578 F.3d 805, 813

(8th Cir. 2009).  Additionally, the absence of side effects from medication is a proper factor for the

ALJ to consider when determining whether a claimant's complaints of disabling pain are credible.

See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable

for the ALJ to consider the fact that no medical records during this time period mention [the

claimant's] having side effects from any medication.").  During various evaluations, the doctors

observed Claimant to be alert, oriented, and cooperative and to have average cognitive functioning

and intact memory.  During the consultative examination in July 2009, Dr. Sklar assigned a GAF

score of 57.  See Halverson v. Astrue, 600 F.3d 922, 930 (8th Cir. 2010); Goff v. Barnhart, 421

F.3d 785, 793 (8th Cir. 2005) (GAF scores between 51 and 60 contradict assertion of severe

mental impairments; evidence in record that "antidepressant medication helped her symptoms, and

her medical records indicate that she was stable on medication.").  According to the Diagnostic

and Statistical Manual of Mental Disorders (DSM-IV), a GAF of 51 to 60 indicates moderate

symptoms.  The Eighth Circuit has held that a GAF score between 51 and 60 does not even signify

a severe impairment under the regulations.  See Goff, 421 F.3d at 789, 791, 793 (finding GAF

scores of 58 and 60 support ALJ's limitation for simple, routine, repetitive work).

The medical records show that Claimant never sought nor received any form of treatment from a mental health specialist until May 13, 2009, the alleged onset date of disability.  See Page v. Astrue, 484 F.3d 1040, 1044 (8th Cir. 2007) (affirming ALJ's determination that mental health issues were not severe where claimant sought very limited treatment).  Indeed, during an evaluation, Claimant denied any history of formal mental health treatment and reported never being hospitalized for psychiatric treatment, but he has visited emergency rooms for symptoms of anxiety.  The fact that Claimant did not seek aggressive treatment from a mental health professional was a proper consideration.  See Partee v. Astrue, 638 F.3d 860, 864 (8th Cir. 2011) (holding that the failure to seek mental treatment is a relevant consideration when evaluating a claimant's mental impairment); Kirby v. Astrue, 500 F.3d 705, 708-09 (8th Cir. 2007) (affirming ALJ's finding that claimant did not suffer significant impairment due to psychiatric illness when claimant had never had any formal treatment by psychiatrist, psychologist, or other mental health professional on a long-term basis); Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (affirming the ALJ's conclusion that mental impairments were not disabling when there was no evidence "of ongoing counseling of psychiatric treatment or of deterioration of change in [claimant's] mental capabilities"); Jones v. Callahan, 122 F.3d 1148, 1153 (8th Cir. 1987) (affirming ALJ's finding that claimant's mental impairment was not severe based on, inter alia, lack of any regular treatment by mental health professional, although claimant "might experience some difficulties associated with his mental or emotional health."); Vanlue v. Astrue, 2012 WL 4464797, at *12 (E.D. Mo. Sept. 26, 2012) (affirming the ALJ's finding that depression was not a severe impairment where the claimant had sought only minimal and conservative treatment and the claimant never required more aggressive forms of mental health treatment than medication).  During treatment on May 13, 2009,

Dr. Raza first diagnosed Claimant with major depressive disorder and panic disorder and having severe stressors including financial and family and prescribed medications as treatment.  Claimant returned for treatment on July 8, September 9, and November 11, 2009, and Dr. Raza adjusted his medications as treatment.  Thereafter, Claimant missed his scheduled appointment in January 2010, and Dr. Raza completed the Medical Assessment of Ability to Do Work-Related Activities after Claimant missed his scheduled appointment.[5]

The ALJ considered at the hearing Claimant "was able to understand and answer questions at the hearing."  (Tr. 17).  "[An] ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations."  Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) ((holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his testimony); Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing [are] completely proper in making credibility determinations").  See also Lamp v. Astrue, 531 F.3d 629, 632-33 (8th Cir. 2008) (holding that in assessing the plaintiff's allegations of lack of concentration, an impaired memory, and depression, the ALJ properly combined his review of the record with his personal observations); Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir. 1993) (observation by the ALJ that claimant had not appeared uncomfortable at the hearing was properly considered as detracting from claimant's credibility).  The ALJ's observations of a claimant's appearance and demeanor during the hearing is consideration.  Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008)

_____

[5]The medical record shows that Claimant missed other scheduled doctor's appointments and to be noncompliant with medications at times.  Wildman v. Astrue, 596 F.3d 959, 965-66 (8th Cir. 2010) ("noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion"); 20 C.F.R. §§ 404.1530, 416.930 (unjustified failure to follow prescribed treatment is grounds for denying disability).

(holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his testimony); Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations); Jones v. Callahan, 122 F.3d 1148, 1151 (8th Cir. 1997) ("When an individual's subjective complaints of pain are not fully supported by the medical evidence in the record, the ALJ may not, based solely on his personal observations, reject the complaints as incredible.").  Here, the ALJ combined his review of the record as a whole with his personal observations.  As such, the Court finds that the ALJ's decision in this regard is based on substantial evidence on the record as a whole.

The ALJ further found his history of marijuana abuse "undermines the credibility of the claimant's testimony by calling into question his ability to report events accurately."  (Tr. 19).  The ALJ noted how Claimant testified that his last drug to be in 2007, but he retracted his testimony when the ALJ cited treatment notes in 2009 indicating drug use at that time.  Indeed, the undersigned notes that in the treatment notes of July 23, 2009, during one consultative examination Claimant denied any illicit drug use, but then reported in another consultative examination heavy use of marijuana often on a daily basis to help him cope with his mood issues but being clean for three months.  At the hearing, Claimant testified that he last used street drugs five years earlier.  "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record," including statements made by the claimant at each prior step of the administrative review process.  SSR-96-7p, 1996 WL 374186, at *5 (July 2, 1996).  Thus, the ALJ properly found that this inconsistency detracted from Claimant's credibility and from the overall credibility of his allegations.

The ALJ next discussed Claimant's daily activities.  The ALJ noted Claimant spends time watching television and walking around the farm, and he can use his left hand to write, use spoons and cups, and open wide-mouthed jars. During an examination, Claimant reported doing some light cooking and helping with the household chores and enjoys fishing, watching television, going for walks, and visiting with his grandchildren.

Finally, also detracting from Claimant's credibility was the evidence that Claimant had not been diagnosed with bipolar disorder although a mental condition he claimed disabled him from all work.  See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (A lack of regular and sustained treatment is an indication that the claimant's impairments are non-severe and not significantly limiting for twelve continuous months).   The ALJ noted that "during the alleged period of disability, the claimant's treating physicians have not indicated a diagnosis of bipolar, there are no records from the period that the claimant was diagnosed and the claimant has not been treated for this condition during the alleged period of disability."  (Tr. 15).

In his brief, Claimant asserts that "[a] consistent work record weighs in favor of a claimant's credibility."  In the instant case, Claimant's work history and earnings record detract from his credibility regarding the severity of his impairments alleged and his overall motivation to work versus motivation for benefits inasmuch as his record documents poor and overall inconsistent earnings.  A poor work history lessens a Claimant's credibility.  Woolf, 3 F.3d at 1214; see also Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) (a poor work history "may indicate a lack of motivation to work, rather than a lack of ability.").  Claimant's work history is characterized by low earnings and significant breaks in employment.  See Goff, 421 F.3d at 793 (claimant left his job because the job ended); Fredrickson v. Barnhart, 359 F.3d 972, 976-77 (8th

- 32 -

Cir. 2004) (holding that the claimant was properly discredited due, in part, to her sporadic work record, reflecting poor earnings and multiple years with no reported earnings, pointing to potential lack of motivation to work);Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (low earnings and significant breaks in employment cast doubt on complaints of disabling symptoms). Likewise, Claimant testified at the hearing that he stopped working when his employer closed.  See Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) (claimant's leaving work for reasons unrelated to medical condition detracted from credibility); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged); Weber v. Barnhart, 348 F.3d 723, 725 (8th Cir. 2003) (noting that claimant left her job due to lack of transportation, not due to disability); Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001) (noting that ALJ's finding that the plaintiff was not fully credible was supported by the fact that the plaintiff did not lose his job because of his disability, but because his position was eliminated); Browning v. Sullivan, 958 F.2d 817, 823 (8th Cir. 1992) (finding that a cessation of work for reasons unrelated to medical condition militated against a finding of disability).

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied relief solely on the lack of objective medical evidence to support his finding that Claimant is not disabled.  Instead, the ALJ considered all the evidence relating to Claimant's subjective complaints, including the various factors as required by Polaski, and determined Claimant's allegations not to be credible.  Although the ALJ did not explicitly discuss each Polaski factor in making his credibility determination, a reading of the decision in its entirety shows the ALJ to have acknowledged and considered the factors before discounting Claimant's subjective complaints.

See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).  Inasmuch as the ALJ expressly

considered Claimant's credibility and noted numerous inconsistencies in the record as a whole, and

the ALJ's determination is supported by substantial evidence, such determination should not be

disturbed by this Court.  Id.; Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996).  Because the

ALJ gave multiple valid reasons for finding Claimant's subjective complaints not entirely credible,

the undersigned defers to the ALJ's credibility findings.  See Leckenby v. Astrue, 487 F.3d 626,

632 (8th Cir. 2007) (deference given to ALJ's credibility determination when it is supported by

good reasons and substantial evidence); Guilliams v. Barnhart, 393 F.3d 798, 801(8th Cir. 2005).

       The undersigned finds that the ALJ considered Claimant's subjective complaints on the

basis of the entire record before him and set out the inconsistencies detracting from Claimant's

credibility.  The ALJ may disbelieve subjective complaints where there are inconsistencies on the

record as a whole.  Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  The ALJ pointed out

inconsistencies in the record that tended to militate against the Claimant's credibility.  See

Guilliams, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is

supported by good reasons and substantial evidence).  Those included Claimant's improvement

with treatment, the medical evidence, and Claimant's demeanor and testimony at the hearing.  The

ALJ's credibility determination is supported by substantial evidence on the record as a whole, and

thus the Court is bound by the ALJ's determination.  See Cox v. Barnhart, 471 F.3d 902, 907 (8th

Cir. 2006);  Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992).  Accordingly, the ALJ did

not err in discrediting Claimant's subjective complaints.  See Hogan v. Apfel, 239 F.3d 958, 962

(8th Cir. 2001) (affirming the ALJ's decision that claimant's complaints of pain were not fully

credible based on findings, inter alia, that claimant's treatment was not consistent with amount of

pain described at hearing, that level of pain described by claimant varied among her medical records with different physicians, and that time between doctor's visits was not indicative of severe pain).  The undersigned finds that substantial evidence supports the ALJ's finding the medical records do not support the extent of Claimant's alleged mental impairments such as dealing with work stress or relating to predictability in social situations.  See Flynn v. Astrue, 513 F.3d 788, 792 (8th Cir. 2008) (standard of review; substantial evidence is enough that reasonable mind might accept it as adequate to support decision).

The substantial evidence on the record as a whole supports the ALJ's decision.  Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome.  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992)).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole.  Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently.  Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001).  Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

B.      Step 5

Claimant contends that the ALJ erred at step 5 in finding that he could perform work as an eyeglass assembler and a printed circuit board assembler in light of the vocational expert opining that such jobs were precluded by the limitation to occasional fingering with his left hand.  Claimant argues that the ALJ's step 5 determination is not supported by substantial evidence.

- 35 -

Defendant agrees that Claimant properly argued that "the ALJ's finding the Plaintiff could perform work as an eyeglass assembler and a printed circuit board assembler is inconsistent with the vocational expert's testimony."  Although the vocational expert initially testified that an individual with Claimant's limitations could perform that work, he subsequently amended his testimony after questioning by counsel and opined that occasional fingering with the left hand would preclude these jobs.  Nonetheless, the vocational expert also opined that this limitation would not preclude the performance of work as a surveillance system monitor.  Thus, the ALJ's finding Claimant able to perform work as an eyeglass assembler and a printed circuit board assembler is a "deficiency in opinion writing technique" which does not require the Court to remand.  See Collins v. Astrue, 648 F.3d 869, 872 (8th Cir. 2011) (deficiency in opinion writing that has no bearing on outcome of the case does not require reversal and remand).  While the ALJ's decision writing may have been deficient, Claimant has not shown how this affected his decision finding Claimant able to perform work as a surveillance system monitor.  See, e.g., Buckner v. Astrue, 646 F.3d 549, 559 (8th Cir. 2011) (holding that reversal is not required by an ALJ's deficient opinion writing unless the deficiency affected the outcome).

The Eighth Circuit has held "an 'arguable deficiency in opinion-writing technique' does not require us to set aside an administrative finding when the deficiency had no bearing on the outcome."  Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992) (quoting Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987)).  Although an unfortunate deficiency, the incongruous finding had no bearing on the outcome.  First, the opinion remained clear that Claimant could perform work as a surveillance system monitor.  The vocational expert testified that are 1,500 surveillance system monitor positions in Missouri and thus Claimant remains capable of performing work that

- 36 -

exists in significant numbers in the national economy. Second, the ALJ's underlying decision found Claimant not to be disabled.  Consequently, the deficiency does not require reversal inasmuch as it had no bearing on the outcome.

C.      Weight Given to Medical Opinions

        Claimant contends that the ALJ erred in weighing the medical opinion evidence by giving insufficient weight to his treating psychiatrist.

        The Court has set forth, above, Dr. Raza's findings in the January 20, 2010 Medical Assessment of Ability to Do Work-Related Activities ("Assessment").  As previously noted, Dr. Raza failed to cite any medical findings supporting his conclusions.  A treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence.  Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).  Further, the ALJ found the assessment was not supported by the medical record, including Dr. Raza's treatment notes, and internally inconsistent.

        Indeed, the record shows that Dr. Raza first treated Claimant on May 13, 2009 and thereafter saw Claimant on three occasions before completing the assessment.  In the assessment, Dr. Raza  found that Claimant had poor to no ability to deal with work stresses, function independently, perform detailed and complex instructions, maintain personal appearance, behave in an emotionally stable manner, and demonstrate reliability.  Dr. Raza  opined that Claimant had serious limitations in following work rules, relating to others, using judgment, maintaining attention and concentration, performing simple instructions, and relating predictability in social situations.

"A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record." Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. §404.1527(d)(2) (alteration in original). "[W]hile a treating physician's opinion is generally entitled to substantial weight, such an opinion does not automatically control because the [ALJ] must evaluate the record as a whole." Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007) (internal quotations omitted). Thus, "'an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record.'" Id. (quoting Prosch v. Apfel, 201 F.3d 1010, 1013-14 (8th Cir. 2000)).

"Generally, the longer a treating source has treated [a claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion." 20 C.F.R. §§ 404.1527(d)(2)(I) ; 416.927(d)(2)(I) . The record does not reflect that Dr. Raza conducted any testing to reach the conclusions set forth in the assessment. Indeed, the record shows Claimant failed to keep the scheduled appointment in January 2010. A claimant's failure to comply with treatment is properly considered when weighing a treating physician's opinion. Owen v. Astrue, 551 F.3d 792, 800 (8th Cir. 2008) ("a claimant's noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion and, therefore, can be considered in determining whether to give that opinion controlling weight). While the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995);

Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data).

Title 20 C.F.R. § 404.1527(d) lists six factors to be evaluated when weighing opinions of treating physicians: (1) the examining relationship; (2) the treatment relationship, including the length of the relationship, the frequency of examination, and the nature and extent of the relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors, e.g., "the extent to which an acceptable medical source is familiar with the other information in [the claimant's] case record."  20 C.F.R. § 404.1527(d)(1)-(6).  Consideration of these factors supports the ALJ's decision not to give greater weight to the limitations imposed by Dr. Raza in the assessment.

Claimant contends that the ALJ erred in failing to give controlling weight to Dr. Raza's assessment.  First, Dr. Raza first treated Claimant on May 13, 2009, his alleged onset date of disability and thereafter saw him three times as follow-up treatment before completing the assessment.  The record shows Claimant missed his scheduled follow-up appointment with Dr. Raza in January 2010.  There are no treatment notes dated January 2010 showing Dr. Raza examined Claimant or completed any testing on that day, and none of the earlier treatment records contain any objective evidence of limitation of the degree set forth in the assessment.  Second, Dr. Raza's opinion was not based on  any medical findings supporting his conclusions set forth in the assessment.  See Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993) (holding that physician's opinion not entitled to weight if based solely on claimant's subjective complaints).  The undersigned notes that Dr. Raza's assessment is not supported by objective clinical and laboratory

diagnostic techniques and inconsistent with her own treatment notes and the record as a whole.  In the Assessment, Dr. Raza opined that Claimant had serious limitations for six years and no ability in every work-related activity but her treatment notes never reflected such findings or limitations. Martise v. Astrue, 641 F.3d 909, 926 (8th Cir. 2011) (affirming ALJ's decision to give treating physician's medical source statement less weight when such was unsupported by medical evidence, including his own treatment notes, and consisted of checkmarks); Clevenger v. S.S.A., 567 F.3d 971, 975 (8th Cir. 2009) (affirming ALJ's decision not to follow opinion of treating physician that was not corroborated by treatment notes).  "It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."  Davidson v. Astrue, 578 F.3d 838, 843 (8th Cir. 2009).

The ALJ did not totally discount Dr. Raza's Assessment but rather considered it as part of the record as a whole.  In particular, the ALJ considered Dr. Raza's Assessment and concluded that her Assessment was not consistent with her own treatment records of the opinions of Dr. Oberlander, Dr. Anderson, Dr. Sklar, and Dr. Cottone.  See Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) (finding the ALJ properly discounted a treating physician's opinion that was conclusory, cited no medical evidence, and provided "little to no elaboration.").  In the treatment note of July, 2009, Dr. Raza noted that Claimant "is aware that if disability is to be decided, it will have to be on the basis of his physical problems involving his wrists."  (Tr. 308).  In the September and October 2009 treatment notes, Dr. Anderson observed Claimant did not exhibit any unusual anxiety or depression.  During a consultative evaluation, Dr. Sklar found Claimant had only moderate limitations in his ability to function and assigned a GAF score of 57.

The ALJ considered the opinions of Dr. Oberlander and Dr. Cottone.  Dr. Oberlander, a medical expert, reviewed Claimant's medical records, observed Claimant during the administrative hearing, and testified at the hearing.  Dr. Oberlander testified that Claimant had moderate limitations in his activities of daily living, marked limitations in maintaining social functioning, and moderate limitations in maintaining concentration, persistence, or pace.  Because of these limitations, Dr. Oberlander found Claimant could perform simple, repetitive work activity with less than frequent contact with others.  The ALJ found Dr. Oberlander's opinion to be entitled to great weight inasmuch as it was consistent with the objective medical evidence.  Likewise, the ALJ considered the opinions of the state agency medical consultants, Dr. Cottone and Dr. Threlkeld. After reviewing the relevant medical records, Dr. Cottone found Claimant's mental impairments would preclude work with intense or extensive interpersonal interaction, but Claimant could perform simple tasks, make simple work-related judgments, relate adequately with co-workers or supervisors, and adjust adequately to ordinary changes in work routine.  The ALJ found this opinion to be consistent with the opinion of Dr. Oberlander and entitled to great weight.  With respect to Dr. Threlkeld's opinion finding Claimant could perform a range of sedentary work with limitations in his ability to finger in his left hand, the ALJ gave great weight to the opinion although he incorporated greater limitations into Claimant's RFC.

The regulations require the ALJ to assess the record as a whole to determine whether the treating physician's opinions are inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).  The undersigned concludes that the ALJ did so here and diminished the weight given Dr. Raza's opinions for proper reasons.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole.  Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently.  Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001).  Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that  the final decision of the Commissioner denying social security benefits be **AFFIRMED**.  Judgment shall be entered accordingly.


_____/s/ Terry I. Adelman_____
UNITED STATES MAGISTRATE JUDGE

Dated this  20th day of September, 2013.

- 42 -